Steven Burlingham, Esq. (Cal. Bar No. 88554)
GARY, TILL AND BURLINGHAM
5330 Madison Avenue, Suite F
Sacramento, California 95841
Telephone: (916) 332-8122
Facsimile: (916) 332-8153
E-mail: steveb@gtblaw.com

Milton L. Chappell, Esq. (D.C. Bar No. 936153)
Nathan J. McGrath, Esq. (Pa. Bar No. 308845)
    (*pro hac vice to be applied for*)
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22151
Telephone: (703) 321-8510
Facsimile: (703) 321-9319
E-mails: mlc@nrtw.org
         njm@nrtw.org

*Attorneys for Plaintiffs Jeffrey Lum, Andrew Li,*
*and the Classes They Seek to Represent*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### San Jose District

| | |
|---|---|
| JEFFREY LUM, ANDREW LI, and the Classes They Seek to Represent, | Case No. _____ |
| Plaintiffs, | Honorable _____ |
| v. | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 521, | **CLASS ACTION COMPLAINT** |
| Defendant, | **Class Action** |
| COUNTY OF SANTA CLARA and IRENE LUI, as Controller-Treasurer, County of Santa Clara, | |
| Rule 19(a) Defendants. | |

AND NOW come Jeffrey Lum ("Lum") and Andrew Li ("Li"), by and through their

undersigned attorneys, and file this Class Action Complaint against Defendants Service

Class Action Complaint

Employees International Union, Local 521 ("Local 521" or "the union"), County of Santa Clara ("County"), sued as a Rule 19(a) defendant, and Irene Lui ("Lui"), Controller-Treasurer, County of Santa Clara, sued only in her official capacity and as a Rule 19(a) defendant, and allege as follows:

## I.  SUMMARY OF THE CASE

1.  This is a civil rights class action pursuant to 42 U.S.C. § 1983, seeking immediate declaratory and injunctive relief, as well as nominal and compensatory damages and/or restitution of non-chargeable union fees illegally collected from Plaintiffs and the class members they wish to represent. Defendants are state actors acting under the color of state law—specifically, the Meyers-Milias-Brown Act, California Government Code § 3500 *et seq.*, and collective bargaining agreements and/or memoranda of agreement between the County and Local 521. Defendant Local 521 has been depriving and continues to deprive Plaintiffs and other public employees of their rights, privileges, and immunities against compelled speech and compelled association under the First and Fourteenth Amendments of the United States Constitution. Defendant Local 521 has deprived, and threatens to continue to deprive, Plaintiffs and the class members they seek to represent of these and related constitutional rights.

Under Ninth Circuit precedent, *Mitchell v. Los Angeles Unified School District*, 963 F.2d 258 (9th Cir. 1992), unions are permitted to collect and expend non-chargeable fees on political, ideological, and non-bargaining activities from a nonmember public employee unless the employee properly, and timely objects[1]—what is commonly known as "opt-out"—to a union's expenditure of his or her non-chargeable fees for such purposes. However, *Mitchell's* continued viability has recently been called into question by the United States Supreme Court's decision in *Knox v. SEIU, Local 100*, 132 S. Ct. 2277 (2012). *Knox* casts doubt upon past *dicta* implying that nonunion employees—who have already rejected union membership—must take the additional step of opting-out of funding union political and other non-bargaining related activities, as opposed to affirmatively "opting-in" to support such political and ideological activities and

---

[1] For purposes of this Complaint, "objecting," or any derivation thereof, and "opting-out," or any derivation thereof, is used interchangeably unless noted otherwise.

Class Action Complaint

expenses. Since the Supreme Court has questioned the legal underpinnings of the opt-out requirement, Plaintiffs hereby seek judicial reconsideration of the "opt-out" requirement, while acknowledging the Ninth Circuit's ruling in *Mitchell*.

2.   In addition to Local 521's unconstitutional opt-out policy, the County has and continues to seize, and Local 521 has and continues to accept, agency fees from Plaintiffs' wages in violation of Plaintiffs' First and Fourteenth Amendment rights established in *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) and *Chicago Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986) (setting forth constitutionally required procedures for collecting agency fees from nonmember public employees).

## II.   JURISDICTION

3.   This action arises under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court, therefore, is properly invoked under 28 U.S.C. § 1331 (federal question).

4.   This action also arises under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983 (2012), to redress the deprivation, under color of state law, of the rights, privileges, and immunities secured to Plaintiffs and the class members they seek to represent by the First and Fourteenth Amendments. Jurisdiction is invoked under 28 U.S.C. § 1343, pursuant to which this Court may grant: (a) injunctive relief against any further collection or acceptance of fees; (b) nominal damages for the violation of Plaintiffs' and class members' First and Fourteenth Amendment rights; (c) compensatory damages and/or partial restitution in the amount of the fees unconstitutionally seized from Plaintiffs' and class members' wages; and (4) reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988.

5.   This is also a case of actual controversy where Plaintiffs seek a declaration by this Court of their and class members' rights under the Constitution of the United States. Under 28 U.S.C. §§ 2201 and 2202, this Court may declare Plaintiffs' and the class members' rights and grant further necessary and proper relief, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

Class Action Complaint

### III. Venue

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because each Defendant maintains an office and transacts significant amounts of business in this judicial district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

### IV. Intradistrict Assignment

7. Pursuant to Civil L.R. 3-2(c) & (e), this case should be assigned to the San Jose Division of this judicial district because a substantial part of the events or omissions that give rise to this case occurred in Santa Clara County. Plaintiffs' claims occurred in the County of Santa Clara. Additionally, a significant portion, if not all, of the collection and acceptance of agency fees (property) from Plaintiffs' and many of the class members' wages occurred and/or are situated in full or in significant part in the County of Santa Clara. As such, San Jose is the proper division for this action.

### V. Parties

8. Plaintiffs.

    a. Plaintiff Jeffrey Lum is, and has been at all times relevant hereto, an individual employed as an inpatient pharmacist by the Santa Clara Valley Medical Center ("Medical Center") located in San Jose, California. The Medical Center is a public hospital owned and operated by the County of Santa Clara. Lum is paid by the County and is, and has been, a "public employee" within the meaning of California Government Code § 3501(d) at all relevant times hereto. Lum is a member of a bargaining unit represented by Local 521. Lum is not a member of Local 521 and has not been a member of that union at any time relevant hereto.

    b. Plaintiff Andrew Li is, and has been at all times relevant hereto, an individual employed as an inpatient pharmacist and subsequently as an epic pharmacy informaticist by the Medical Center located in San Jose, California. The Medical Center is a public hospital owned and operated by the County of Santa Clara. Li is paid by the County and is, and has been, a "public employee" within the meaning of California Government Code § 3501(d) at all relevant times hereto. Li is a member of a bargaining unit represented by Local 521. Li is not a member of Local 521 and has not been a member of that union at any time relevant hereto.

-4-

9.   Defendants.

a.   Defendant Service Employees International Union, Local 521, an "employee organization" pursuant to California Government Code § 3501(a), maintains an office at 2302 Zanker Road, San Jose, California, and is the "recognized employee organization," as defined by California Government Code § 3501(b), for Plaintiffs and other similarly situated employees of the Medical Center. On information and belief, Local 521 conducts business and operations throughout the State of California and is headquartered in San Jose, California.

b.   Defendant County of Santa Clara is a "public agency" pursuant to California Government Code § 3501(c), and has offices at 70 West Hedding Street, San Jose, California. It is sued as a Rule 19(a) defendant. The County owns and operates the Medical Center and pays the wages of its employees, including Plaintiffs Lum and Li.

c.   Defendant Irene Lui, named herein as a Rule 19(a) defendant, is the Controller-Treasurer of the County of Santa Clara. As such, on information and belief, she is charged with the responsibility of issuing wages to the County's employees, including Plaintiffs and class members, and processing all deductions therefrom, including union dues and agency fees pursuant to agency shop or agency fee agreements. She is sued only in her official capacity.

## VI.   CLASS ACTION ALLEGATIONS

10.   Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure, Rules 23(b)(1)(A) and (b)(2) and, alternatively, 23(b)(3), for themselves and for all others similarly situated. The class for Count I ("Class I") that Plaintiffs seek to represent consists of all former, current, and future nonmember employees, from December 1, 2014, and subsequent, who are, have been, or will be represented by Local 521 and who are, have been, or will be, from December 1, 2014, and subsequent, compelled to pay agency fees to Local 521 as a condition of employment. The class for Counts II and III ("Class II") that Plaintiffs seek to represent consists of all nonmember employees, from December 1, 2014, and subsequent, who have or will object to paying non-chargeable fees, which are fees in excess of Local 521's annually calculated chargeable collective bargaining expenses.

Class Action Complaint

11.    Upon information and belief, the number of individuals in Class I and Class II, respectively, is so numerous in varying locations and jurisdictions across California that joinder is impractical.

12.    There are questions of law and fact common to all Class I class members, including Plaintiffs. These include whether Local 521's policy requiring nonmember employees to affirmatively opt-out of paying for non-bargaining activities violates the First Amendment's least restrictive means test and constitutes prior restraint on nonmember employees' speech.

13.    There are questions of law and fact common to all Class II class members, including Plaintiffs. These include whether the County and Local 521 may constitutionally and lawfully collect and accept union fees, which include non-chargeable fees, from an objecting nonmember employee before or without providing procedural safeguards required by the First and Fourteenth Amendments to the United States Constitution, to which all objecting nonmembers are entitled.

14.    Plaintiffs' claims in this matter are typical of the respective Class I or Class II class members who are subject to the same deprivations of their rights by the County's and/or Local 521's seizure, collection, transmittal, or acceptance of union fees from nonmembers and objecting nonmembers. Local 521 and/or the County owe an identical duty with regards to these claims to Plaintiffs and all other respective Class I or Class II class members.

15.    Plaintiffs can adequately represent the interests of the respective Class I and Class II class members and have no conflict with those class members who have chosen to be nonmember and objecting nonmember employees, respectively, and who are, as a condition of employment, similarly forced to pay union fees to Local 521.

16.    Local 521's nonmember employee opt-out requirements apply equally to Plaintiffs and all Class I class members, and the prosecution of separate actions by those individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Local 521.

17.    Local 521's objecting nonmember rebate policies and procedures and its actions pertaining thereto apply equally to all Plaintiffs and Class II class members, and the prosecution

of separate actions by those individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Local 521.

18.     Local 521 has acted, and continues to act to deprive Plaintiffs and each Class I and/or Class II class member of his or her constitutional and civil rights on grounds generally applicable to all, thereby making certain declaratory, injunctive, and other equitable relief appropriate for all Plaintiffs and class members.

19.     Alternatively, the questions of law or fact raised in this Complaint concerning the constitutional and civil rights of nonmember employees and objecting nonmember employees, respectively, are common to Plaintiffs and the respective Class I and Class II class members and predominate over any questions affecting an individual class member.

20.     A class action is superior to other available methods for fair and efficient adjudication of the controversies, in that Plaintiffs and the respective Class I and Class II class members are deprived of the same constitutional and civil rights by Local 521's collection of fees, differing only in immaterial aspects of their factual situations. The limited amount of money at stake for each individual nonmember and/or objecting nonmember employee makes it burdensome for Plaintiffs and class members to maintain individual, separate actions.

21.     Local 521's illegal actions against all Class I and/or Class II class members were taken pursuant to the same union opt-out requirement and agency fee policies and procedures, and constitute a concerted scheme that results in the violation of Plaintiffs' and class members' rights at multiple levels.

22.     Plaintiffs' attorneys are provided to Plaintiffs and class members *pro bono* by a national, charitable organization that provides free legal aid to employees. These attorneys are experienced in representing nonmember employees in federal civil rights litigation, having litigated many of the leading constitutional and statutory cases in this area of law, including class actions involving union fee issues identical or similar to those raised in this action and pertaining to the class. These attorneys are best able to represent the interests of the Class I and/or Class II class members and will fairly, zealously, and adequately do so.

Class Action Complaint

## VII. FACTS

23.     Lum, a "public employee" within the meaning of California Government Code § 3501(d), is an inpatient pharmacist who works at the Medical Center in San Jose, California, which is owned and/or operated by the County. He is an employee of and paid by the County, which is a "public agency" pursuant to California Government Code § 3501(c). Although Lum is a member of a bargaining unit represented by Local 521, exclusively for the purpose of collective bargaining, he is not a member of Local 521.

24.     Li, a "public employee" within the meaning of California Government Code § 3501(d), was a pharmacist and is now an epic pharmacy informaticist who works at the Medical Center. He is an employee of and paid by the County. Although Li is a member of a bargaining unit represented by Local 521, exclusively for the purpose of collective bargaining, he is not a member of Local 521.

25.     As authorized by California Government Code § 3502.5, Local 521, the "recognized employee organization" pursuant to California Government Code § 3501(b), and the County entered into a collective bargaining agreement and/or memorandum of agreement (hereinafter referred to as "Agreement" either singularly or jointly) that included a compulsory fees provision requiring all employees in a represented position, including Plaintiffs' positions, to join Local 521 or pay union fees as a condition of employment.

26.     The Agreement between Local 521 and the County authorizes the County to make automatic union fee deductions from the wages of bargaining unit employees represented by Local 521, including Plaintiffs, and to transmit those fees to Local 521.

27.     Pursuant to the Agreement, the County, under the direction of the County's Controller-Treasurer, has, does, and will continue to periodically deduct fees from the wages of the Plaintiffs and class members of both classes and ensure that said fees are transmitted to the union.

28.     Unless a nonmember files an objection with Local 521 according to the union's policies and procedures, Local 521 expends fees collected from Plaintiffs' and other

Class Action Complaint

nonmembers' wages for the union's political, ideological, and other non-bargaining activities, without the affirmative consent or authorization of those nonmember employees.

29.     Nonmember employees, including Plaintiffs, who wish to protect their First Amendment right not to support Local 521's political, ideological, and other non-bargaining activities must take affirmative action to stop this expenditure of their fees for political and ideological activities by opting-out.

30.     Nonmembers and Plaintiffs must opt-out during a designated, approximately one-month, window period, comply with Local 521's opt-out procedures contained in its Notice to Service Fee Payers ("*Hudson* Notice"), which is annually sent to nonmembers and Plaintiffs, and affirmatively object to paying for the union's non-bargaining activities.

31.     Local 521's *Hudson* Notice offers nonmembers four options: (1) enter into full union membership and pay full union dues, (2) be a nonmember who fails to opt-out to funding the political, ideological, and non-bargaining activities and thus pays an amount of fees equal to full union dues, (3) be a nonmember who timely opts-out and requests a rebate of the non-chargeable amount, or (4) be an objecting nonmember who also timely challenges the union's calculation of the chargeable amount, in which case the amount reasonably in dispute is held in an escrow account during the pendency of the challenge.

32.     Not only must nonmembers and Plaintiffs take the initial affirmative steps to opt-out of financially supporting the union's political, ideological, and non-bargaining activities, but opting-out is an annual requirement an employee must renew each year under Local 521's policies and procedures.

33.     If a nonmember or Plaintiff fails to annually renew his or her opt-out request, then Local 521's default position resumes, which is to collect and use the nonmember's non-chargeable fee to support the union's political, ideological, and other non-bargaining activities.

34.     All nonmembers and Plaintiffs must annually repeat the opt-out process *ad infintum* in order to protect their First Amendment rights to refrain from supporting Local 521's political, ideological, and other non-bargaining activities from year-to-year.

Class Action Complaint

35.     Local 521, for the 2013 fee year, required nonmembers who wanted to opt-out to make their rebate requests in writing. Said opt-out requests had to be received by Local 521 "between December 10, 2012 and January 11, 2013." The 2013 fee year *Hudson* Notice stated that objecting nonmembers should "[a]llow 8-12 weeks" for their rebate request to be processed. The 2013 fee year opt-out policies and procedures were published in a *Hudson* Notice dated December 3, 2012.

36.     On information and belief, Local 521's 2013 fee year is January 1, 2013, through December 31, 2013.

37.     Plaintiffs and other nonmembers submitted proper and timely requests for their rebate, and opted-out of paying the non-chargeable union fees for the 2013 fee year.

38.     Nevertheless, Local 521, during the entire 2013 fee year, collected from Plaintiffs and other objecting nonmembers agency fees equal to full union dues, which included non-chargeable fees.

39.     On information and belief, Local 521 did not deposit the fees it collected from Plaintiffs and other objecting nonmembers during the 2013 fee year into an independent, interest bearing escrow account.

40.     Local 521 did not rebate the non-chargeable fees it collected during the 2013 fee year to Plaintiffs and the other objecting nonmembers until March 2014, approximately fourteen months after the 2013 fee year opt-out and objection window period had closed.

41.     Local 521 knew, or should have known, within thirty days of the closure of the 2013 fee year objection window period that Plaintiffs and other objecting nonmembers had opted-out and requested a rebate of their non-chargeable fees.

42.     In March 2014, when Local 521 rebated the non-chargeable fees it had taken from Plaintiffs and other objecting nonmembers during the 2013 fee year, the rebates to Plaintiffs and other objecting nonmembers did not include interest payments on the non-chargeable fees. Nor was a separate interest payment to them, apart from the rebate, made thereon.

Class Action Complaint

43.     Local 521, on information and belief, has used non-chargeable fees collected during fee year 2013 from Plaintiffs and other objecting nonmembers to support its political, ideological, and other non-bargaining activities.

44.     Local 521, for the 2014 fee year, required nonmembers who wanted to opt-out to make their rebate requests in writing, which were to be received in "the San Jose union office." Said rebate requests had to be "postmarked between December 16, 2013 and January 17, 2014." The 2014 fee year *Hudson* Notice stated that objecting nonmembers should "[a]llow 8-12 weeks" for their rebate request to be processed. The 2014 fee year opt-out policies and procedures were published in a *Hudson* Notice dated December 9, 2013.

45.     On information and belief, Local 521's 2014 fee year is January 1, 2014, through December 31, 2014.

46.     The Plaintiffs and other nonmembers submitted proper and timely requests for their rebate, and opted-out of paying the non-chargeable union fees for the 2014 fee year.

47.     Local 521, from the beginning of the 2014 fee year to date, has collected agency fees from Plaintiffs and other objecting nonmembers equal to full union dues, including non-chargeable fees.

48.     On information and belief, Local 521 has not deposited the fees it has collected from Plaintiffs and other objecting nonmembers during fee year 2014 into an independent, interest bearing escrow account.

49.     Local 521, to date, has not rebated to Plaintiffs and the other objecting nonmembers the non-chargeable fees it has collected during the 2014 fee year. Nor has Local 521 paid interest to Plaintiffs or other objecting nonmembers on the fees it has collected and continues to collect from them during the 2014 fee year to date.

50.     Local 521 knew, or should have known, within thirty days of the closure of the 2014 fee year objection window period that Plaintiffs and other objecting nonmembers had opted-out and requested a rebate of their non-chargeable fees.

Class Action Complaint

51.     Local 521, on information and belief, has used and continues to use non-chargeable fees collected from Plaintiffs and objecting nonmembers during fee year 2014 to support its political, ideological, and other non-bargaining activities.

52.     Local 521 continues to have the County deduct agency fees, which include non-chargeable fees, from the wages of Plaintiffs and other objecting nonmembers and transmit said fees to Local 521.

53.     It is the general practice of Local 521 to collect an amount of fees equal to full union dues from nonmembers and objecting nonmembers alike throughout the duration of a particular fee year.

54.     It is the general practice of Local 521 to collect non-chargeable fees from nonmembers and objecting nonmembers throughout a particular fee year.

55.     On information and belief, it is the general practice of Local 521 not to deposit fees collected from objecting nonmembers who only opt-out and request a rebate into an independent, interest bearing escrow account until said non-chargeable fees are rebated.

56.     On information and belief, it is the general practice of Local 521 not to pay interest to an objecting nonmember on non-chargeable fees collected from the objecting non-members for a particular fee year.

57.     On information and belief, the non-chargeable fees collected by Local 521 from nonmembers and objecting nonmembers in any particular fee year, which were not, are not, and will not be held in an independent, interest bearing escrow account until rebated, were, are, and will continue to be used by Local 521, at least in part, without the consent or authorization of Class I or Class II class members to support political, ideological, and other non-bargaining activities.

58.     Although Local 521, in its *Hudson* Notice, advises nonmembers that processing their opt-out rebate request may take up to three months, in practice, objecting nonmembers are often separated from the non-chargeable portion of their compulsory agency fees for up to fourteenth months after the close of the opt-out period for any given fee year.

–12–

59.     In any particular fee year, fees are deducted from nonmembers and objecting nonmembers' wages by the County and/or Lui at Local 521's direction and/or pursuant to the terms of the Agreement that was entered into by Local 521 and the County, and Local 521's agency fee rebate policies and procedures.

60.     During the 2013 and 2014 fee years, and continuing into future fee years, the County, at the direction of Local 521, has and will continue to deduct fees from Plaintiffs', objecting nonmembers', and other nonmembers' wages in an amount that did and will include non-chargeable fees and was and will be equal to the full union dues amount for a particular fee year. Local 521 has and will continue to use such fees to, at least in part, support its political, ideological, and other non-bargaining activities.

61.     Unless restrained by this Court, Defendants will continue to collect, transmit, accept, and/or use non-chargeable fees on a regular basis during a respective fee year from Plaintiffs' and Class I and Class II class members' wages without depositing and holding said fees in an independent, interest-bearing escrow account; and will continue to withhold rebates for up to fourteen months, notwithstanding the fact that Plaintiffs and Class II class members timely and properly opted-out and objected pursuant to Local 521's policies and procedures for same; and will continue to refuse to pay interest on collected non-chargeable fees; and will continue to deduct and without any permission or authorization from Class I or Class II class members, Local 521 will expend collected non-chargeable fees in the future on political, ideological, and other non-bargaining activities.

## VIII.   COUNT I

*(Violation of 42 U.S.C. § 1983 and the U.S. Constitution—Challenge to Opt-Out Requirement)*

62.     Plaintiffs incorporate and re-allege by reference all facts contained in the foregoing paragraphs of this Complaint, as if fully set forth herein.

63.     The First Amendment to the Constitution of the United States protects the associational and free speech rights of United States citizens.

64.     The Fourteenth Amendment to the Constitution of the United States incorporates the protections of the First Amendment against the States.

–13–

65.    Whenever a union, under color of law, impinges upon nonmember employees' speech and associational rights, it must use procedures that are least restrictive on employees' constitutional speech and associational rights. *Knox*, 132 S. Ct. at 2289.

66.    Local 521's opt-out/objection policies, practices, and procedures are not narrowly tailored to meet the least restrictive means test. It requires Plaintiffs and Class I class members to take a series of affirmative actions, over and over again on an annual basis, in order to refrain from paying for the union's political, ideological, and other non-bargaining activities. Instead, the narrowly tailored default position that properly and fully protects employees' First Amendment rights and is more consistent with the least restrictive means requirement of constitutional jurisprudence is an inverse policy and procedure that is structured to require an affirmative action to *opt-in* to paying for Local 521's political and ideological activities by a nonmember's written and knowing consent and authorization.

67.    The establishment and maintenance of Local 521's opt-out process is unnecessary, burdensome, and susceptible to resistance and pressure from the union and its members. Requiring a nonmember employee's contribution to non-chargeable union expenditures unless, and until, the employee successfully completes the multi-step, annual, and time-limited opt-out and objection process serves no compelling state interest, and is not narrowly tailored to provide the least restrictive means of achieving a state interest in requiring nonmembers to support a union's chargeable expenditures on behalf of the bargaining unit.

68.    There is no rational basis—let alone a compelling state interest—justifying the requirement that individual nonmembers pay fees in excess of the chargeable fee amount, *i.e.*, fees that subsidize Local 521 and/or its affiliates' political and other non-chargeable activities. This improper choice structure (a self-serving, default position that employees *must* pay fees for political activities unless they act to stop it) is a prior restraint on Plaintiffs' and Class I class members' First Amendment speech and associational rights not to support such activities, and is not the least restrictive means for achieving the government's legitimate interests.

69.    The only assumed or default position consistent with the First Amendment's least restrictive means requirement is that neither the state nor a union may collect or deduct any non-

chargeable monies from a nonmember employee unless the nonmember employee takes

affirmative action and consents to paying the additional non-chargeable fees, *i.e.*, opts-in.

70.     As a direct result of Defendants' actions taken and threatened pursuant to Local 521's

policies, practices, and procedures and the Agreement, Plaintiffs and Class I class members are:

a.     in imminent danger of being deprived of their rights guaranteed to them under

the Constitution and statutes of the United States;

b.     in imminent danger of suffering monetary, equitable, and other damages; and

c.     in imminent danger of suffering irreparable harm, damage, and injury that is

inherent in the violation of First Amendment rights, for which there is no adequate remedy at

law.

71.     If not enjoined by this Court, Defendants and/or their agents will effect the

aforementioned deprivations and abridgements of Plaintiffs' and Class I class members' First

Amendment rights, thereby causing irreparable harm, damage, and injury for which there is no

adequate remedy at law.

## IX.     COUNT II—Alternative to Count I

*(Violation of 42 U.S.C. § 1983 and the U.S. Constitution—Substantive First Amendment Rights)*

72.     Plaintiffs incorporate and re-allege by reference all facts contained in the foregoing

paragraphs of this Complaint, as if fully set forth herein.

73.     The First and Fourteenth Amendments to the United States Constitution require

procedures for the collection of compelled fees be narrowly tailored to limit the infringement on

nonunion employees' fundamental rights. Such fees may only be seized in a manner least

restrictive to the nonmember employees' freedoms of speech, association, petition, belief,

thought, and due process, and in a manner that facilitates the nonmember employees' ability to

protect those rights. *Hudson*, 475 U.S. at 302–03.

74.     Nonmembers cannot be forced to support speech with which they disagree and, when

forced to pay union fees, cannot be charged more than is needed to cover "'expenditures [which]

are necessarily or reasonably incurred' in collective bargaining." *Grunwald v. San Bernardino

City Unified Sch. Dist.*, 994 F.2d 1370, 1373-74 (9th Cir. 1993) (citations omitted). "Money

–15–

Class Action Complaint

collected from nonmembers may not be used, even temporarily, for ideological purposes, lest [nonmembers] be forced to make 'an involuntary loan' which the union can use to promote its political ends." *Id.* at 1374 (citations omitted). If a union does collect fees from objecting nonmembers beyond the chargeable amount, the fees should be held so that "*none* of the objectors' money is or can be used by the union for ideological purposes." *Id.* To "avoid forced subsidies forbidden by the First Amendment, unions must adopt procedures 'such as advance reduction of dues and/or interest-bearing escrow accounts.'" *Id.*

75.   Local 521 violates the constitutional (First and Fourteenth Amendment) and 42 U.S.C. § 1983 rights of Plaintiffs and Class II class members by not providing them an advanced rebate *before* collecting agency fees, which include non-chargeable portions; or, in the alternative, by failing to deposit collected agency fees into an independent, interest bearing escrow account until the non-chargeable fee portion is promptly rebated to the objecting nonmembers. Local 521's failure to provide either an advanced rebate to objecting nonmembers or to deposit collected agency fees into an independent, interest bearing escrow account allows Local 521 and/or its affiliates to illegally use, even if only temporarily, the non-chargeable fees collected for political, ideological, and other non-bargaining activities.

76.   Additionally, Local 521 does not make an interest payment to objecting nonmembers for the period of time the objecting nonmembers are separated from the non-chargeable portion of the fees collected from them during a relevant fee year.

77.   As a direct result of the actions threatened and taken by Defendants pursuant to Local 521's policies, practices, and procedures and the Agreement, Plaintiffs and Class II class members are:

      a.   in imminent danger of being deprived of their rights guaranteed to them under the Constitution and statutes of the United States;

      b.   in imminent danger of suffering monetary, equitable, and other damages; and

      c.   in imminent danger of suffering irreparable harm, damage, and injury that is inherent in the violation of First Amendment rights, for which there is no adequate remedy at law.

–16–

Class Action Complaint

78.     If not enjoined by this Court, Defendants and/or their agents will effect the aforementioned deprivations and abridgements of Plaintiffs' and Class II class members' constitutional (First and Fourteenth Amendment) and statutory rights, thereby causing irreparable harm, damage, and injury for which there is no adequate remedy at law.

## X.   COUNT III—Alternative to Count I

*(Violations of 42 U.S.C. § 1983 and the U.S. Constitution—Procedural First Amendment Rights)*

79.     Plaintiffs incorporate and re-allege by reference all facts contained in the foregoing paragraphs of this Complaint, as if fully set forth herein.

80.     Local 521's deduction and rebate policies, practices, and procedures violate the constitutional (First and Fourteenth Amendment) rights of Plaintiffs and Class II class members because there is no circumstance that creates a legitimate purpose, compelling reason, or adequate justification for using a deduction and rebate procedure. Or, assuming *arguendo* that there is, Local 521's objection and rebate procedure is neither constitutionally adequate nor reasonable because it does not rebate non-chargeable fees to objecting nonmembers in a reasonably prompt period of time. *See Grunwald*, 994 F.2d at 1375–77.

81.     As a direct result of Defendants' actions threatened and taken pursuant to Local 521's policies, practices, and procedures and the Agreement, Plaintiffs and Class II class members are:

a.     in imminent danger of being deprived of their rights guaranteed to them under the Constitution and statutes of the United States;

b.     in imminent danger of suffering monetary, equitable, and other damages; and

c.     in imminent danger of suffering irreparable harm, damage, and injury that is inherent in the violation of First Amendment rights, for which there is no adequate remedy at law.

82.     If not enjoined by this Court, Defendants and/or their agents will effect the aforementioned deprivations and abridgements of Plaintiffs' and Class II class members' constitutional (First and Fourteenth Amendment) and statutory rights, thereby causing irreparable harm, damage, and injury for which there is no adequate remedy at law.

–17–

Class Action Complaint

## XI.   COSTS AND ATTORNEYS' FEES

83.     Pursuant to 42 U.S.C. § 1988, Plaintiffs seek an award of their costs, including reasonable attorneys' fees, incurred in the litigation of this case.

## XII.   PRAYER FOR RELIEF

84.     WHEREFORE, Plaintiffs pray that this Court:

a.     **Preliminary injunction:** immediately issue a preliminary injunction ordering Local 521 to cease expending any fees collected from any objecting nonmember (Plaintiffs and/or Class II class members) during fee year 2014, no matter the method, and deposit such fees, including those already received and/or expended since January 1, 2014, into an independent, interest bearing escrow account until all Plaintiffs and Class II class members have received a correct rebate, including interest, of all non-chargeable fees collected during the 2014 fee year (January 1, 2014 to present date), which rebate, including interest, shall be made within 30 days of the issuance of the injunction, and apply same to any subsequent fee year for the duration of this matter;

b.     **Class action:** enter an order, as soon as practicable, certifying this case as a class action and certifying Class I and Class II as defined in this Complaint, certifying Jeffrey Lum and Andrew Li as class representatives for both classes, and appointing Plaintiffs' counsel, Steven Burlingham, Milton L. Chappell, and Nathan J. McGrath, as class counsel for both classes.

c.     **Declaratory judgment:** enter a declaratory judgment declaring that:

i.     Local 521's opt-out policies, practices, and procedures are unconstitutional and impermissibly abridge Plaintiffs' and Class I class members' First Amendment rights by violating the least restrictive means standard by authorizing Local 521 to collect fees from Plaintiffs and class members to be expended on Local 521 and its affiliates' non-chargeable (political, ideological, and/or non-bargaining) activities unless Plaintiffs and class members affirmatively and in writing opt-out of such financial support; or, alternatively,

ii.     Local 521's policies, practices, and procedures providing for a rebate to Plaintiffs and/or Class II class members later than the date the first union fee deduction is

Class Action Complaint

made from Plaintiffs or Class II class members in any respective fee year is a violation of Plaintiffs' and Class II class members' constitutional rights;

       iii.    Local 521's policies, practices, and procedures of not placing seized or accepted fees into an independent, interest-bearing escrow account until non-chargeable fees are rebated to objecting nonmembers are a violation of the constitutional rights of Plaintiffs and Class II class members;

       iv.    Local 521's policies, practices, and procedures of not providing interest payments on the rebates to Plaintiffs and Class II class members of the non-chargeable fees seized from them by the County and/or Local 521 is a violation of the constitutional rights of Plaintiffs and Class II class members; and

       v.    Local 521's policies, practices, and procedures of taking "8-12 weeks" to process an opt-out objection request of a nonmember, including the reality of taking up to fourteen months to rebate the non-chargeable fee amount to objecting nonmembers, is a violation of the constitutional rights of Plaintiffs and Class II class members;

      d.    **Permanent injunction:** enter a permanent injunction enjoining Local 521 from:

       i.    engaging in any activities this Court declares illegal;

       ii.    requiring, seizing, collecting, or receiving fees from any nonmember employee that exceed the nonmember employee's *prorated* share of collective bargaining expenses for a respective fee year unless the nonmember employee affirmatively consents in writing (opts-in) to supporting Local 521's and its affiliates' political, ideological, and/or other non-bargaining activities; or, alternatively;

       iii.    requiring, seizing, collecting, or receiving any fees from Plaintiffs or Class II class members unless Local 521 has first given Plaintiffs and Class II class members proper procedural protections pursuant to and in compliance with the Supreme Court's ruling in *Hudson* by giving adequate notice and either providing them with advanced rebate payments before seizing, collecting, or receiving fees deducted from their wages; or, alternatively, order Local 521 to place all fees it seizes, collects, or receives from Plaintiffs and/or Class II class

Class Action Complaint

members in a respective fee year into an independent, interest-bearing escrow account until it correctly rebates all non-chargeable fees, with interest, to objecting nonmembers and does so within thirty days of the end of the objection window period of the respective fee year;

   e. **Rule 19(a) permanent injunction:** enter a permanent injunction enjoining the County and/or the County's Controller-Treasurer from deducting or in any other way collecting from Plaintiffs or Class I class members non-chargeable fees in any given fee year unless nonmembers affirmatively consent in writing (opt-in) to supporting Local 521's and its affiliates' political, ideological, and/or other non-bargaining activities;

   f. **Damages:** enter a judgment awarding Plaintiffs and class members compensatory damages for the injuries sustained as a result of Defendant Local 521's unlawful interference with and deprivation of their constitutional and civil rights including, but not limited to, the amount of agency fees improperly deducted from their wages, interest, nominal damages, and such other amounts as principles of justice and compensation warrant;

   g. **Other relief:** grant Plaintiffs such additional or different relief it deems just and proper;

   h. **Costs and attorneys' fees:** enter a judgment awarding Plaintiffs their costs, including reasonable attorneys' fees under 42 U.S.C. § 1988; and

   i. retain jurisdiction over this action for a reasonable period of time after entering a final judgment to ensure Local 521 and the County comply with the Orders of this Court.

   Dated this 26th day of November, 2014.

         Respectfully submitted,

         GARY, TILL AND BURLINGHAM

         By: /s/ Steven Burlingham

           Steven Burlingham, Esq. (Cal. Bar No. 88554)
           GARY, TILL AND BURLINGHAM
           5330 Madison Avenue, Suite F
           Sacramento, California 95841
           Telephone: (916) 332-8122
           Facsimile: (916) 332-8153
           E-mail: steveb@gtblaw.com

Class Action Complaint

Milton L. Chappell, Esq. (D.C. Bar No. 936153)
Nathan J. McGrath, Esq. (Pa. Bar No. 338845)
   (*pro hac vice to be applied for*)
c/o National Right to Work Legal
Defense Foundation, Inc.
8001 Braddock Road, Suite 600
Springfield, Virginia 22151
Telephone: (703) 321-8510
Facsimile: (703) 321-9319
E-mails:  mlc@nrtw.org
         njm@nrtw.org

*Attorneys for Plaintiffs Jeffrey Lum, Andrew Li,
and the Classes They Seek to Represent*

—21—

Class Action Complaint